

DA 06-0556

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 286

FARMERS COOPERATIVE ASSOCIATION,

      Plaintiff, Counterdefendant and Appellant,

  v.

AMSDEN, LLC,

      Defendant, Counterclaimant and Appellee.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and For the County of Powder River, Cause No. DV 04-2367
Honorable Gary L. Day, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jeff A. Turner, Towe, Ball, Enright, Mackey & Sommerfeld, Billings, Montana

          James L. Edwards, Stevens, Edwards, Hallock & Carpenter, Gillette, Wyoming

      For Appellee:

          John L. Amsden, Beck, Amsden & Ruggiero, Bozeman, Montana

          Gary Kalkstein, Kalkstein & Johnson, Missoula, Montana

Submitted on Briefs:  June 20, 2007
Decided:  November 6, 2007

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Farmers Cooperative Association (FCA) appeals from two orders of the Sixteenth Judicial District, Powder River County, denying FCA's motion to amend the pleadings and granting Amsden, LLC's (Amsden) motion for summary judgment. We affirm.

¶2 FCA presents the following issues for review:

¶3 Whether the District Court abused its discretion in denying FCA's motion to amend its complaint.

¶4 Whether the District Court properly granted Amsden's motion for summary judgment.

**PROCEDURAL AND FACTUAL BACKGROUND**

¶5 Amsden entered into a buy-sell agreement with FCA to purchase a gas station and convenience store in Broadus, Montana. The purchase price included the real estate and assorted equipment. The parties agree that Amsden paid the purchase price in full at closing. FCA alleges that the parties also entered into a separate oral agreement around the time of the buy-sell agreement to purchase inventory and additional equipment.

¶6 FCA commenced this action on December 27, 2004, when it sued Amsden for breach of contract. FCA alleged that Amsden had failed to pay the entire purchase price contained in the buy-sell agreement. FCA asserted that Amsden owed $49,566.60 for the real estate and $2,498.27 for equipment identified in the buy-sell agreement. Amsden's answer claimed that it had paid in full. Although FCA did not allege any amounts owed outside the buy-sell agreement, Amsden attempted during discovery to obtain information from FCA relating to

2

any possible claims arising from the purchase of inventory. FCA objected to this interrogatory, asserting that it would "not lead to the discovery of admissible evidence."

¶7 FCA moved to amend its complaint on December 22, 2005, more than four months after the deadline set by the court's scheduling order to amend pleadings had expired. FCA argued that it needed to amend the complaint to reflect accurately the claims that it had made in its original complaint. FCA also argued that its amendment would not change the nature of the claim for relief or the amount that it sought to recover. Amsden did not object timely to the motion. The court granted FCA leave to amend on January 11, 2006, for good cause shown and notwithstanding the expiration of the deadline to amend the pleadings.

¶8 FCA's first amended complaint alleged that it sought to recover for Amsden's failure to pay for inventory and supplies, not Amsden's failure to pay the full purchase price under the buy-sell agreement. Amsden objected to FCA's motion to amend the same day the court granted it. The court recognized that Amsden's objection was untimely. The court nevertheless rescinded its order granting leave to amend. The court ordered a hearing to explore Amsden's argument that allowing the amendment would cause prejudice and delay. The court finally denied FCA's motion for leave to amend on the grounds that the motion had been untimely and that FCA did not show good cause under M. R. Civ. P. 16(b) for the delayed amendment. The court also determined that Amsden would have been prejudiced both by the late amendment on the inventory issue and by FCA's assertion during discovery that purchase of the inventory was not relevant to its claim for relief.

¶9 Amsden next moved for summary judgment on the grounds that FCA's original complaint did not allege sufficiently claims relating to payment for inventory. Amsden

3

further argued that it had paid the full purchase price under the buy-sell agreement. FCA did not contest these assertions. The District Court agreed that no substantial issues of material fact existed under the original complaint relating to Amsden's payment of the full purchase price. The court further determined that FCA's original complaint failed to allege any claims relating to the inventory. FCA appeals.

## DISCUSSION

¶10 *Whether the District Court abused its discretion in denying FCA's motion to amend its complaint.*

¶11 FCA raises three separate arguments in support of its claim that the District Court abused its discretion when it denied FCA's motion to amend its complaint. FCA first argues that the District Court improperly dismissed the motion without showing that FCA was guilty of delay, bad faith or dilatory motive. FCA next argues that Amsden cannot demonstrate that the late amendment would have caused prejudice because correspondence between the parties had put Amsden on notice of FCA's intent to raise the inventory issue. Finally, FCA argues that the court abused its discretion in denying it leave to file an untimely amended complaint, while correspondingly granting Amsden's untimely objection. We address each argument in turn.

¶12 The decision to grant or deny a motion to amend lies within the discretion of the district court. *Bitterroot Inter. Sys. v. West. Star Trucks*, 2007 MT 48, ¶ 48, 336 Mont. 145, ¶ 48, 153 P.3d 627, ¶ 48. We review a district court's denial of a motion to amend a pleading to determine whether the court abused its discretion. *Reier Broad. Co. v. Mt. State Univ.-Bozeman*, 2005 MT 240, ¶ 8, 328 Mont. 471, ¶ 8, 121 P.3d 549, ¶ 8. M. R. Civ. P 15(a)

4

provides that "leave [to amend] shall be freely given when justice so requires." A district court "is justified in denying a motion for an apparent reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by allowance of the amendment, futility of the amendment, etc." *Bitterroot Inter. Sys.*, ¶ 50 (citations and internal quotation marks omitted).

¶13 FCA argues that a district court should otherwise grant leave to amend unless the moving party is guilty of undue delay, bad faith or dilatory motive, citing our decision in *Lien v. Murphy Corp.*, 201 Mont. 488, 492, 656 P.2d 804, 806 (1982). FCA contends that it was guilty only of making an inadvertent error in a poorly worded complaint. FCA mistakenly reads *Lien* in isolation. Our more recent decisions reveal that undue delay, bad faith, and dilatory motive represent just three, among many justifications, for denying leave to amend. Other reasons include "repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by allowance of the amendment, futility of amendment, etc." *Bitterroot Inter. Sys.*, ¶ 50; *Loomis v. Luraski,* 2001 MT 223, ¶ 41, 306 Mont. 478, ¶ 41, 36 P.3d 862, ¶ 41; *Lindey's v. Professional Consultants*, 244 Mont. 238, 242, 797 P.2d 920, 923 (1990).

¶14 The District Court focused on the amendment's potential for causing undue prejudice to Amsden. We previously have found undue prejudice when the opposing party already had expended "substantial effort and expense" in the course of the dispute that "would be wasted" if the moving party were allowed to proceed on a new legal theory. *Eagle Ridge Ranch v. Park County*, 283 Mont. 62, 68-69, 938 P.2d 1342, 1346 (1997). We also have

5

balanced this prejudice against the sufficiency of the moving party's justification of the delay. *Bitterroot Inter. Sys.*, ¶¶ 52-54.

¶15    FCA's original complaint alleged only breach under the buy-sell agreement. FCA never indicated before December 22, 2005, that it would pursue recovery for inventories covered by the alleged separate oral agreement. Amsden proceeded for nearly a year under the presumption that it needed to defend itself only from allegations arising from the buy-sell agreement. FCA's refusal to answer Amsden's interrogatories about the sale of inventory bolstered this presumption.

¶16    FCA claimed in its response to Amsden's interrogatories that the subject of inventory would be *irrelevant* to the ongoing action. The inventory issue, in fact, presented an entirely new claim for relief. The inventory claim did not arise under an integrated contract for real property, like the buy-sell. It instead arose under an alleged separate oral contract for goods. The fact that Amsden easily could prove that it had paid in full under the buy-sell agreement, and had prepared accordingly, compounds the potential for prejudice.

¶17    FCA also failed to provide a sufficient reason for the late amendment. FCA simply called its original complaint "not well-worded." FCA otherwise did not explain sufficiently why it had failed to allege the inventory issue in its original complaint, why it refused to answer interrogatories on inventory, or why it had waited nearly a year to assert the inventory claim. These failures combined with Amsden's showing of prejudice presented sufficient justification for the District Court to deny FCA's motion for leave to amend.

¶18    FCA argues, however, that the District Court could not have found prejudice in light of the fact that Amsden had been on notice of FCA's intent to raise the inventory issue. FCA

points to correspondence between the parties before and during litigation concerning inventory. It contends that the correspondence reflects the fact that Amsden was on notice that FCA intended to seek payment for inventory in the action. FCA argues that it had refused to discuss inventory during discovery because Amsden's interrogatory related to the cost-basis of the inventory. FCA asserts that the cost-basis was irrelevant because FCA intended to sell the inventory for the same amount for which it originally had purchased the inventory.

¶19 Amsden did not merely inquire about the inventory's cost-basis. Amsden's interrogatory requested a list of the inventory items in question, the amount FCA paid for those items, the amount billed to Amsden, and any invoices or statements related to the sale of inventory from FCA to Amsden. FCA's refusal to answer on the basis that its answer would "not lead to the discovery of admissible evidence," moreover, does not support the reasoning that FCA asserts on appeal. This plain statement suggests that FCA would not pursue recovery under the alleged separate inventory agreement in its action for breach of the buy-sell agreement. FCA may have notified Amsden that it had concerns about the inventory. In the context of litigation, however, FCA disclaimed its intention to pursue an inventory claim through its inventory response and through its omission of any inventory claim in its original complaint.

¶20 Finally, FCA asserts that the District Court abused its discretion when it denied FCA's untimely motion for leave to amend while allowing Amsden's untimely objection to FCA's motion. FCA points to our decision in *Aldrich & Co. v. Ellis*, 2002 MT 177, ¶ 27, 311 Mont. 1, ¶ 27, 52 P.3d 388, ¶ 27, for the proposition that a court abuses its discretion

7

when it denies leave to file an amended complaint on the grounds that it is untimely, while correspondingly granting an untimely motion to the opposing party.

¶21   Our decision in *Aldrich*, however, did not pronounce such a broad, bright-line rule. *Aldrich* considered the timeliness of the parties' motions only as one factor.  We held in *Aldrich* that the district court abused its discretion for a number of reasons.  The denied amendment asserted a meritorious claim that may have changed the outcome of the case. *See Aldrich*, ¶ 28.  The proceedings had not yet progressed to an advanced stage, as the parties had conducted no discovery and the court had not yet set a trial date.  *Aldrich*, ¶ 27. We balanced the fact that the district court granted the plaintiff's untimely motion while denying the defendant's untimely motion against those other facts in determining that the district court abused its discretion.  *Aldrich*, ¶ 27-28.

¶22   The District Court likewise considered several factors in evaluating whether to grant FCA leave to amend.  The court considered whether FCA timely had filed its motion.  The court considered whether FCA had shown good cause pursuant to M. R. Civ. P 16(b).  And the court considered whether the late amendment would prejudice Amsden.  All of these considerations support the District Court's decision.

¶23   *Whether the District Court properly granted Amsden's motion for summary judgment.*

¶24   FCA argues that the District Court improperly granted Amsden's motion for summary judgment.  We review *de novo* a district court's decision to grant summary judgment, using the same criteria applied by the district court under M. R. Civ. P. 56.  *Shelton v. State Farm Mut. Auto Ins. Co.*, 2007 MT 132, ¶ 13, 337 Mont. 378, ¶ 13, 160 P.3d 531, ¶ 13.  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and

8

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M. R. Civ. P. 56(c). We draw all reasonable interferences in favor of the party opposing summary judgment. *Shelton*, ¶ 13.

¶25     In light of our decision that the District Court properly denied FCA's motion for leave to amend the pleadings, this dispute contains no genuine issue of material fact. All of the pleadings in this case indicate that FCA's sole allegation in this action is that Amsden breached the buy-sell agreement by not paying the full purchase price. Both FCA and Amsden agree on appeal that Amsden had paid the purchase price in full. The District Court correctly determined that Amsden was entitled to summary judgment as a matter of law.

¶26     Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ JIM RICE